**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CARRIE LEE STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| MICHAEL ASTRUE, | ) | 1:07CV196 |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carrie Lee Stephens, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and a period of disability, and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act").  The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on December 8, 2003 (protective filing date, November 17, 2003), with an alleged onset of disability (AOD) of September 1,

2003.[1]  Tr. 57, 58, 265A.  The applications were denied initially and upon reconsideration.  Tr. 25, 26; 265D, 265J.  Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ).  Tr. 36.  Present at the hearing, held on November 10, 2005, were Plaintiff, her non-attorney representative, and a vocational expert (VE).  Tr. 300; see also Tr. 56.

By decision dated May 25, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  See Tr. 13.  On October 2, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 8, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3.  The claimant's seizure disorder and hypertension are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[1]  At her disability hearing, Plaintiff amended her AOD to April 1, 2004.  See Tr. 322.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the following residual functional capacity:  to lift 20 pounds occasionally and ten pounds frequently, walk/stand six hours in an eight-hour workday, and sit six hours in an eight-hour workday.  The claimant must avoid concentrated exposure to hazards and extreme temperatures.  The claimant cannot balance or drive.

7.    The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8.    The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

9.    The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11.   The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a recreational therapist.

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

Tr. 23-24.

## Analysis

In her brief before the court, Plaintiff argues that the Commissioner's final decision should be reversed because of the ALJ's many errors. She contends:

(1)  The ALJ's residual functional capacity (RFC) finding is flawed in that it is contrary to the opinion of her treating physician and the ALJ failed to support her rejection with substantial evidence. As a result, the hypothetical opinion presented to the VE at the hearing was improper, and, thus, the VE's response thereto cannot support the ALJ's decision.

(2)  The ALJ's step-five finding is unsupported as it relies on Plaintiff's past relevant work (PRW), and the ALJ found that Plaintiff could not perform any of her PRW.

(3)  The ALJ did not properly support her rejection of Plaintiff's treating physician's opinion.

(4)  The ALJ failed to provide adequate reasons for questioning Plaintiff's credibility.

In addition, Plaintiff asks that the court remand her case for consideration of "new evidence." The Commissioner rejects Plaintiff's allegations and urges that substantial evidence supports the determination that Plaintiff was not disabled.

4

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity (SGA), (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents PRW, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by

---

[2]    Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3]    The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). All regulatory references herein will be to Title 20, "Employees' Benefits." Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

substantial evidence and whether the correct law was applied. <u>Richardson v.</u> <u>Perales</u>, 402 U.S. 389 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a <u>de novo</u> review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. <u>See</u> <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (citing <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

<u>Pertinent Evidence Presented</u>

The ALJ found that Plaintiff was fifty years of age with a high school education plus one year of college. Tr. 17. The ALJ referred to Plaintiff's testimony that she had PRW as a home attendant, nursing assistant, recreational therapist, and

6

cleaner.  Tr. 22.  The ALJ cited to Plaintiff's allegation that she became disabled, on September 1, 2003, due to a seizure disorder only.  Tr. 17.

The ALJ decided that Plaintiff had not engaged in SGA since her AOD.  The ALJ also determined that Plaintiff met the disability insured status requirements of the Act through the date of the ALJ's decision.  Further, the ALJ found the medical evidence to establish that Plaintiff suffered from the severe impairments of hypertension and a seizure disorder.  She concluded, nevertheless, that none of these impairments, either singly or in combination, met or equaled any of the Listing of Impairments.

1.  Treating Physician's Opinion

Plaintiff's Brief raises as her first issue the ALJ's step-five finding; however, the court finds it most expedient initially to address her contentions concerning her treating physician's opinion, as this issue lies at the heart of Plaintiff's complaint.

The regulations require all medical opinions in a case to be considered. Section 404.1527(b).  Treating physician opinions, however, are accorded special status.  See section 404.1527(d)(2).  "Courts typically 'accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'"  Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (internal citation omitted)).

7

The rule, however, does not mandate that such opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight only if it is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. See section 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Plaintiff first alleges that the ALJ "determined" that Megdad M. Zaatreh, M.D. was "a treating physician whose opinion was entitled to great weight." Pl.'s Br. at 9 (citing Tr. 19). But Plaintiff is only partially right. The "opinion" to which the ALJ was referring were the following statements, referenced by the ALJ as follows:

> A progress note dated March 8, 2005 notes the claimant had been doing very well since she had been taking her medications regularly. Dr. Zaatreh said in the past, the claimant used to have one seizure a week, but there were many issues with medication compliance. Dr. Zaatreh said since the claimant had been properly taking her anticonvulsants, she was having infrequent events. Dr. Zaatreh said the claimant was not having any side effects from her medications. *Dr. Zaatreh opined that it was appropriate to continue the claimant only on medical therapy with no need for further surgical evaluation.*

8

> Although Dr. Zaatreh had in the past entertained the possibility of intracranial monitoring, with the claimant doing well with medication compliance, this was not warranted. Dr. Zaatreh said if the claimant's events became more refractory or more frequent or she developed side effects from her medication, he would consider re-evaluating her for non-medical therapies[.]

Tr. 18-19 (citing Tr. 262-63) (emphasis added). The ALJ specifically cited to the doctor's "most recent opinion" in assigning weight. Tr. 19. She added, "The undersigned notes that Dr. Zaatreh's opinion concerning the status of the claimant's seizure disorder *when compliant with medication* is supported by laboratory findings, clinical findings, and consistent with the record." Id. (emphasis added).

Plaintiff, however, refers to Dr. Zaatreh's *first* opinion while he was not even a "treating physician." Plaintiff initially went to the University of North Carolina Hospitals ("UNCH") in September 2004 for electroencephalographic ("EEG") monitoring. See Tr. 213-20. Apparently, Dr. Zaatreh conducted this monitoring. See especially Tr. 218-20. At most, though, Plaintiff saw Dr. Zaatreh only one additional time before the doctor completed a "Questionnaire" provided to him by Plaintiff's non-attorney representative. See Tr. 262 (Dr. Zaatreh's March 2005 note that Plaintiff was last seen in the clinic four months previously). When discussing this questionnaire, the ALJ does not yet refer to Dr. Zaatreh as a "treating physician." See Tr. 18.

As cited by Plaintiff, Administration regulations provide for the Commissioner to give more weight to the opinion of a treating physician because that physician is

most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. Section 404.1527(d)(2). <u>See also</u> <u>Smith v. Schweiker</u>, 795 F.2d 343, 345-46 (4th Cir. 1986). By November 8, 2004, when he signed the Questionnaire, Dr. Zaatreh had only seen Plaintiff, at most, twice in a two-month period. Clinic records thereafter note that Plaintiff's seizures were occurring only once per month, Tr. 259, and Plaintiff was "doing very well" now that she was taking her medication regularly, Tr. 262.

In addition, Dr. Zaatreh's latter opinion is consistent with the concurrent records of her treating neurologist, Dr. Bruce Solomon. In April 2005, Dr. Solomon observed that Plaintiff was "doing quite well with her seizures," having had only one "brief" one in February. Tr. 255. When Plaintiff next saw Dr. Solomon, in July, he noted that she had had no subsequent seizures and was "doing exceptionally well." Tr. 254. The ALJ duly discussed these records. <u>See</u> Tr. 19.

Plaintiff argues that the ALJ should instead have adopted Dr. Zaatreh's earlier opinion that she was limited, in an eight-hour workday, to sitting five hours, standing two hours, and walking one hour.[4] <u>See</u> Tr. 226. But Dr. Zaatreh offers no explanation for these restrictions, nor does Plaintiff.

Plaintiff contends that there is no showing "that her risk of seizures has been completely controlled or eradicated." Pl.'s Br. at 9. Yet the court notes that Plaintiff's

---

[4] Of note, neither Dr. Solomon, who treated Plaintiff regularly since March 2002, nor Dr. Gabriel Fernandez, who was Plaintiff's general practitioner from 1999, opined that Plaintiff was so restricted. <u>See</u> Tr. 271-75; 278-79.

Case 1:07-cv-00196-TDS-WWD   Document 20   Filed 07/24/08   Page 10 of 21

medical records show that, although she had a seizure in February 2005, there is no evidence that she suffered another one before June 2006. See Tr. 254, 262, 280. This frequency is less than that established in medical records from 2002, see Tr. 121, 123, 128, and Plaintiff did not stop working until 2004. The ALJ did not deny that "the risk of seizures is still present." Pl.'s Br. at 7. But this risk has been present since Plaintiff was eighteen years old, and Plaintiff had worked consistently from that age, see Tr. 66, until such time as her seizures became frequent in 2004. As Plaintiff's seizures have again become infrequent, within the regulatory durational period, see section 404.1509, the ALJ committed no error in disregarding Dr. Zaatreh's November 2004 RFC opinion.

As Dr. Zaatreh's questionnaire responses were "not supported by clinical evidence," Craig, 76 F.3d at 590, the ALJ did not err in not according them controlling weight. And as Plaintiff has not established error in the ALJ's decision to adopt Dr. Zaatreh's March 2005 opinion, the court will not remand on this basis. Cf. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (plaintiff carries the burden through step four, and thus must establish his RFC, which is assessed prior to step four).

2. Credibility

Plaintiff next attempts to rely on her hearing testimony to support the Questionnaire's limitations, but cites only to her statements that she is still having seizures and that she also suffered side effects from her medications, such as right

11

hand tremors and excessive sleepiness. As already noted, Plaintiff's medical records show that, when medication-compliant, her seizures initially decreased to less than once per month. See Tr. 262 (Dr. Zaatreh's March 8, 2005, note that Plaintiff had experienced one seizure each in October, January, and February). With further compliance, however, Plaintiff's seizures virtually disappeared. Cf. section 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Clearly, her 2005 medical records, discussed above, do not support an RFC for less than light work.

Further, the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence.[5] Plaintiff testified that she lost most of her jobs due to her seizures, yet initially testified that she worked at one for twelve years. Tr. 307, 308. Plaintiff's Disability Report shows that she had only four jobs between the years of 1974 and 2002. See Tr. 73. Plaintiff further stated that, before February 2005, she was having four seizures per day, lasting five minutes each. Tr. 310. But UNCH reported her seizure activity at once per month, Tr. 259; Dr. Zaatreh noted that they were once per week, Tr. 262; and in October 2004, Dr. Solomon said that Plaintiff had not had any seizures in "several months," Tr. 182. By March 8, 2005,

---

[5]     Plaintiff complains of the ALJ's reliance on her change in AOD, yet ignores that Plaintiff was actually working at the time she filed her disability applications, see Tr. 72; see also Tr. 189, and later indicated that she had not worked since then, see Tr. 101, although there is evidence to the contrary, see Tr. 114, 187.

Dr. Zaatreh observed that Plaintiff's seizures were "infrequent," with one each in October, January, and February. Tr. 262.

As to her seizures' duration, there is no other mention in the record of any lasting so long. During her EEG monitoring, Dr. Zaatreh recorded three events, with the longest lasting a mere fifteen seconds. <u>See</u> Tr. 220. At a surgical consultation, Plaintiff placed her seizure duration at up to three minutes. Tr. 259. An August 2001 seizure lasted about two and one-half minutes. Tr. 132. Plaintiff told UNCH that, during her episodes, she was "unresponsive for about a minute." Tr. 257. Plainly, Plaintiff's statements are far from consistent. <u>See</u> Social Security Ruling 96-7p, 61 Fed. Reg. 34483, 34487 (noting that consistency of a claimant's statements provides strong indication of the individual's credibility).

Plaintiff also claims that her medical records support her statements that she becomes weak and dizzy, Tr. 316, and her medications make her drowsy, Tr. 319. Yet the court could find *no* mention in the records of Plaintiff complaining of weakness, and only one complaint of dizziness: Plaintiff reported that she would "occasionally" feel dizzy or lightheaded after taking her medications. Tr. 260. Nor could the court find a complaint to any caregiver that Plaintiff's medication made her drowsy. On the other hand, there are multiple notations that Plaintiff did *not* suffer any side effects. <u>See, e.g.</u>, Tr. 193, 254, 263; <u>see also</u> Tr. 95. On the whole, the court finds that the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence.

13

3.  Step Five

Plaintiff's step-five arguments are two-fold, but as the initial claim is nullified by the court's decision on the second, the court will address the second argument first.  Plaintiff's second step-five complaint is based on the premise that the ALJ found that Plaintiff could not perform her PRW.  The court, however, is persuaded by Defendant's response that the ALJ's error occurred only in compiling her decision.

As quoted above, the ALJ found that (i) Plaintiff could not perform any of her PRW and, (ii) based on the VE's testimony that Plaintiff could perform the job of recreational therapist, Plaintiff was not disabled.  On page seven of her decision, the ALJ listed Plaintiff's PRW, including the position of "recreational therapist."  Tr. 22. The ALJ mistakenly, however, claimed that the VE testified that this position, like Plaintiff's other PRW, "falls in the medium category of physical exertional requirements."  Id.  But during the hearing, the VE had listed this job as "strength level light."  Tr. 323.  The ALJ then asked the VE if an individual restricted to a limited range of light work could "perform the recreational therapist job *which is the only one I see that's light*?"  Tr. 324 (emphasis added).  The VE answered yes.

Thus, the ALJ actually decided Plaintiff's case at step four, rather than step five, of the sequential evaluation procedure.  This interpretation is borne out by the totality of the ALJ's examination of the VE.  The ALJ did not question the VE beyond Plaintiff's PRW, i.e., did not ask the VE if, given such a hypothetical claimant, there

14

were any jobs in the national economy which such claimant could perform.  Cf.

Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002) (once the claimant reaches step

five, the Commissioner bears the burden of providing evidence of a significant

number of jobs in the national economy that the claimant can perform).  Accordingly,

it is clear that the ALJ found that Plaintiff could indeed perform her PRW as a

recreational therapist, as testified to by the VE.  This court refuses to remand a case

based on an obvious technicality.  See, e.g., Brown v. Chater, 87 F.3d 963, 966 (8th

Cir. 1996) ("An arguable deficiency in opinion-writing technique is not a sufficient

reason for setting aside an administrative finding where . . . the deficiency probably

had no practical effect on the outcome of the case." (citation omitted; alteration in

original)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No

principle of administrative law or common sense requires us to remand a case in

quest of a perfect opinion unless there is reason to believe that the remand might

lead to a different result.").

As to the initial part of her step-five claim, Plaintiff posits that the ALJ's

hypothetical to the VE is flawed because it is based on an RFC for light work.  "The

purpose of bringing in a [VE] is to assist the ALJ in determining whether there is

work available in the national economy which this particular claimant can perform."

Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).  It is well

established that, for a VE's opinion to be relevant, "'it must be based upon a

consideration of all other evidence in the record, and it must be in response to

15

proper hypothetical questions which fairly set out all of claimant's impairments.'"
Hines, 453 F.3d at 566 (quoting Walker, 889 F.2d at 50). The hypothetical, however,
need only reflect those impairments supported by the record. See Howe v. Astrue,
499 F.3d 835, 842 (8th Cir. 2007); Robbins v. Social Sec. Admin., 466 F.3d 880, 886
(9th Cir. 2006); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Shepherd
v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999).

Plaintiff urges that, based on Dr. Zaatreh's November 2004 opinion, the ALJ
should have limited her hypothetical claimant to an RFC that was limited to
sedentary exertion, at best. This issue, however, has been resolved hereinabove
in Defendant's favor. Because the court finds no error in the ALJ not adopting the
earlier opinion, Plaintiff has not established that the ALJ erred in presenting a
hypothetical claimant that could perform light work.

4. New Evidence

Last of all, Plaintiff contends that her case should be remanded for the
consideration of a "neuropsychological evaluation" which Plaintiff posits is "a
comprehensive evaluation of [her] social, medical and educational history,"
performed July 25, 2007, by Thomas J. Harbin, Ph.D. See Pl.'s Br. at 12 (citing
Exhibit 1 (hereinafter, "Exh. 1")).

A reviewing court may remand a case to the Commissioner on the basis of
new evidence only if four prerequisites are met: (1) the evidence must be relevant
to the determination of disability at the time the application was first filed; (2) the

16

evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court.  See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985);[6] see also 42 U.S.C. § 405(g).  In order to perform the Borders evaluation, the court will address each of Dr. Harbin's summary conclusions separately.[7]

---

[6]    The court duly notes, and cites its adherence to, the following observation:

   The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir. 1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  Id. at 774; see Wilkins v. Secretary of Dep't of Health & Human Serv., 953 F.2d 93, 96 n. 3 (4th Cir. 1991) (en banc).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that Borders' construction of § 405(g) is incorrect.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6, 110 S. Ct. 2658, 2664 n. 6, 110 L. Ed. 2d 563 (1990).

   Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent Borders inquiry.

Brock v. Secretary of Health & Human Servs., 807 F. Supp. 1248, 1250 n. 3 (S.D. W. Va. 1992).

[7]    The court notes Plaintiff's satisfaction of the fourth Borders criteria by her attachment of the evaluation to her Brief.

For the purposes of 42 U.S.C. Section 405(g), "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Dr. Harbin stated that Plaintiff has carried a diagnosis of epilepsy since adolescence, Exh. 1 at 5, but this fact is already established in the record, and the doctor proposed no limitations attributable thereto. Consequently, Plaintiff has not established that this finding is material.

Dr. Harbin added that Plaintiff "suffers from [a] severe and diffuse cognitive impairment. The impairment was evident in virtually all areas of cognition." Id. He described this impairment as "longstanding" and "permanent." Id. Even so assuming, see Luckey v. United States Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989), there is no indication that this finding is material.

Plaintiff has not proposed any rationale for the ALJ to change her decision based on her newly-discovered cognitive impairment, and the court cannot imagine one. Despite such impairment, Plaintiff finished high school and did not attend special education classes. See Tr. 78. She received her nursing assistant certification in 1973, see Tr. 303, and took additional courses in the 1990s, see Tr. 78. It appears that Plaintiff lived by herself until her physician advised her, for safety's sake, not to live alone. See Tr. 315-16.

Moreover, until the time of her AOD, Plaintiff had been steadily employed for some thirty years. Plaintiff stated that, in her work, she used technical knowledge

18

or skills, and wrote or completed reports. Tr. 73. Further, Plaintiff did not attribute her inability to work on a cognitive impairment but, rather, on her seizures. See, e.g., Tr. 84, 95, 109; see also Tr. 192. Because there is no indication that Plaintiff's cognitive impairment would prevent her from engaging in SGA, this finding would not constitute material evidence. Cf. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) (to be disabled, an individual must be unable "to engage in any" SGA).

Dr. Harbin also found that evidence "suggested" that Plaintiff suffered from "moderate to severe depression", Exh. 1 at 5; but there is no showing that this finding was relevant at Plaintiff's AOD. There are indications throughout Plaintiff's medical records that she suffered from some anxiety, see, e.g., Tr. 123, 132, 177, 213, 264, but there is only a single mention of depression.[8]

As to Plaintiff's *anxiety*, none of her caregivers suggested any treatment other than medication.[9] See Tr. 123, 132, 142, 188, 189, 320. Moreover, the state agency experts who reviewed Plaintiff's records found it to be non-severe. See Tr. 239; see also Tr. 229. And as with her cognitive impairment, there is evidence that Plaintiff's

---

[8]   When Plaintiff was discharged from her EEG monitoring, the doctor summarily added "depression" as a diagnosis. See Tr. 213. There is no indication that Plaintiff was evaluated for depression or that she exhibited any symptoms thereof.

[9]   Plaintiff contends that Dr. Harbin's evaluation "provides substantial support for the opinions of [her] treating physicians," Pl.'s Br. at 13, yet none of Plaintiff's caregivers opined that she was unable to work by any reason other than her seizures, and Dr. Harbin attributes no limitations to this impairment.

19

anxiety pre-dated her AOD, see, e.g., Tr. 123, 132, 142, but with no worsening prior to or thereafter.

Again, as with her cognitive impairment, Plaintiff did not allege that a mental health impairment prevented her from engaging in SGA. And at her hearing, Plaintiff testified that, in spite of not taking her antidepressant, she did not feel that she suffered from depression. Tr. 312-13. Plaintiff stated that she had stopped taking her antidepressant about a year prior to the hearing, with her doctor's approval. Tr. 320. It is possible that Plaintiff's depression was "severe"[10] when she met with Dr. Harbin,[11] but there is no showing that it was at the time of her AOD, or even when her case was before the ALJ. Consequently, this finding appears to be neither relevant nor material.

Plaintiff does not provide sufficient "good cause" for failing to provide the information contained in Dr. Harbin's evaluation in a more timely fashion. If Plaintiff had suspected that her depression or cognitive impairment rendered her incapable of SGA, she could have asked the ALJ for a consultative examination. Cf. §§ 404.1517 and 404.1519a. Further, Plaintiff could have requested additional time

---

[10] An impairment is severe when, either by itself or in combination with other impairments, it "significantly limits" a claimant's physical or mental abilities to perform basic work activities. Section 404.1521(a).

[11] Additionally, Dr. Harbin indicated that Plaintiff's depression might "respond favorably to pharmacological treatment," Exh. 1 at 5, and if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

20

from the ALJ, or even the Appeals Council, in order to obtain the evaluation on her own.  That Plaintiff was not able to gather this evidence before retaining her current counsel is not the sort of explanation upon which this court can order remand.  "Such a rule would require [the trial] court to order a new beginning in such a matter whenever an applicant acquires a new lawyer with a new idea."  <u>Geyen v. Secretary of Health & Human Servs.</u>, 850 F.2d 263, 264 (5th Cir. 1988) (pre curiam).

## Conclusion and Recommendation

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied.  Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED.  To this extent, Plaintiff's motion for summary judgment (pleading no. 13) seeking a reversal of the Commissioner's decision should be DENIED, Defendant's motion for judgment on the pleadings (pleading no. 15) should be GRANTED, and this action should be DISMISSED with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

July 24, 2008

21